**UNITED STATES of America**

v.

**Sa'ad EL–AMIN**

**No. CRIM 3:03CR55.**

United States District Court,
E.D. Virginia,
Richmond Division.

May 9, 2005.

Robert E. Trono, Office of the U.S. Attorney, Gregg R. Nivala, Richmond, VA, for United States of America.

Paul Geoffrey Gill, Robert James Wagner, Office of the Federal Public Defender, Richmond, VA, for Sa'ad El–Amin.

## MEMORANDUM OPINION

HUDSON, District Judge.

THIS MATTER is before the Court on Petitioner Sa'ad El–Amin's ("El–Amin" or "Defendant") Motion to Correct or Amend his Sentence pursuant to 28 U.S.C. § 2255 and the United States's Motion to Withdraw its Motion under Federal Rule of Criminal Procedure 35(b) ("Rule 35(b)").

## I. PROCEDURAL HISTORY

On May 8, 2003, a federal grand jury sitting in Richmond, Virginia issued a nineteen-count superseding indictment. Count One charged El–Amin with conspiring with his wife to defraud the United States in violation of 18 U.S.C. § 371; Count Two charged El–Amin with evading tax payments in violation of 26 U.S.C. § 7201; Counts Three through Five charged El–Amin with filing false tax returns in violation of 26 U.S.C. § 7206; Counts Six through Eight charged El–Amin with failure to file a tax return in violation of 26 U.S.C. § 7203; Counts Nine through Fifteen charged El–Amin with mail fraud in violation of 18 U.S.C. § 3241; Counts Sixteen through Eighteen charged El–Amin with bankruptcy fraud in violation of 18 U.S.C. §§ 152, 2; and, Count Nineteen charged El–Amin with obstruction of justice in violation of 18 U.S.C. § 1503.

On June 25, 2003, El–Amin entered into a plea agreement and pled guilty to Count One. El–Amin acknowledged that the factual allegations alleged in Count One of the indictment were true and accurate and that, had the matter proceeded to trial, the United States could have proved those facts beyond a reasonable doubt. In exchange for his plea of guilty to Count One, the United States agreed to dismiss the remaining Counts of the Indictment. Additionally, El–Amin agreed to waive his right to appeal any sentence within the statutory maximum for Count One. El–Amin further agreed to cooperate fully and truthfully with the United States and provide all information known to him regarding any criminal activity. It was further agreed that upon acceptance of the agreement by the Court, the United States would make a motion under United States Sentencing Guideline § 5K1.1 with respect to his wife, Beverly Crawford ("Crawford"), and recommend that she be sentenced to 12 months of home incarceration. The parties agreed that any alleged breach of the plea agreement would be deter-

mined by the Court at an appropriate proceeding. With respect to sentencing, the United States and El–Amin agreed that the following Sentencing Guideline calculations were appropriate:

a loss amount under U.S.S.G. § 2T4.1 of greater than § 400,000.00 but less than $1,000,000.00 yielding an offense level of 20; a 2 point role in the offense adjustment for use of a special skill pursuant to U.S.S.G. § 3B1.3; a 2 point enhancement for obstruction of justice pursuant to U.S.S.G. § 3C1.1; a 3 point reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1; and an offense level total of 21, criminal history category I, yielding a guideline range of 37 to 46 months.

Plea Agreement ¶ 17. The United States and the defendant further agreed that, pursuant to Fed.R.Civ.P. 11(c)(1)(B), a 37 month sentence was appropriate. Plea Agreement ¶ 18.

Prior to sentencing, El–Amin tendered to the United States a series of objections wherein El–Amin challenged virtually all of the sentencing concessions he had made as part of his plea agreement. First, in contradiction of his prior agreement, El–Amin argued that a base offense level of eighteen rather than twenty was appropriate.[1] Second, El–Amin objected to a two point role in the offense adjustment for use of a special skill as an attorney. Finally, El–Amin objected to the two point enhancement for obstruction of justice on the grounds that, contrary to his prior sworn representations, he did not attempt to persuade Crawford to file false tax returns.

Upon receiving El–Amin's objections, the prosecutor advised trial counsel that if El–Amin pursued his written objections, the United States would move the Court to deny El–Amin the concessions contained in the plea agreement. Trial counsel relayed this communication to El–Amin. Trial counsel advised El–Amin that if he pursued his objections, one possible outcome was that the United States could successfully void all of the concessions it had made in the plea agreement and jeopardize Crawford's sentence of home confinement. Trial counsel reminded El–Amin that even if he withdrew the written objection they could still be brought to the attention of the Court when the United States filed its Rule 35(b) motion. El–Amin followed counsel's advice and withdrew the objections.

On October 17, 2003, in accordance with terms of the plea agreement, the Court sentenced El–Amin to a term of 37 months of imprisonment.

On October 15, 2004, in order to comply with the applicable time limitations, the United States filed a motion under Rule 35(b). The United States requested the Court to hold the Motion under advisement while it assessed the value and extent of El–Amin's cooperation.

On October 18, 2004, the Court received a Motion under 28 U.S.C. § 2255 from El–Amin. The grounds for relief in the § 2255 are as follows:

Claim 1 Counsel for the government engaged in misconduct when he threatened to withdraw from or deprive El–Amin of the concessions

---

1. This objection was predicated on El–Amin's assertion that the 2000 edition of the Guidelines should have been used to calculate his sentence because no conspiratorial conduct occurred after November of 2001. As the United States observes, such an argument ignores El–Amin's acknowledgment that as part

of his conspiracy, he attempted to corruptly persuade Crawford to file false tax returns with the Internal Revenue Service in February of 2002 and 2003. *See* Plea Agreement Statement of Facts; Superseding Indictment ¶ 12(*o*).

agreed to the in the Plea Agreement if El–Amin did not withdraw written objections to the Presentence Report.

Claim 2 The Probation Officer used the wrong edition of the Federal Sentencing Guidelines in computing El–Amin's sentence, to wit, the 2003 edition rather than the 2000 edition was used resulting in a higher base offense level.

Claim 3 When the Probation Officer improperly used the 2003 edition of the Sentencing Guidelines, he was able to include the penalties and interest accrued on taxes allegedly owed by El–Amin and Crawford. Had the Probation Officer used the proper edition, to wit the 2000 edition, penalties and interest were not permitted to be used to establish the tax loss. This violated the ex post facto provisions of the United States Constitution.

Claim 4 The inclusion of "use of a special skill" enhancement by the Probation Officer was not justified because El–Amin was not a tax attorney and the business and operating accounts maintained by El–Amin and Crawford were always know[n] to, open and available to the government for scrutiny. Additionally, "special skill" is included in the dollar amount of loss which is the specific offense characteristic.

Claim 5 The enhancement for obstruction of justice is without factual or legal support and was therefore improperly used to increase his prison sentence.

Claim 6 The enhancements and the amount of tax loss which increased El–Amin's base offense level violated El–Amin's Fifth and Sixth Amendment rights because the Federal Sentencing Guidelines and Rule 32 of the Federal Rules of Criminal Procedure allow the Court to find the facts supporting the enhancements and tax loss

by a preponderance of the evidence . . . . If the Supreme Court extends its holding in *Blakely* to the Federal Sentencing Guidelines, El–Amin will be entitled to be resentenced . . . .

On December 30, 2004, the United States filed a Motion to Withdraw its Motion For Reduction of Sentence. On February 7, 2005, El–Amin moved to amend his 28 U.S.C. § 2255 to assert:

Claim 7 Counsel was ineffective for advising El–Amin to withdraw his objections to the Presentence Report.

On February 18, 2004, El–Amin, by counsel, filed an opposition to the withdrawal of the motion for reduction of sentence. The United States has responded to El–Amin's opposition to the withdrawal of the motion for a reduction of sentence.

## II. Defendant's 28 U.S.C. § 2255 Petition

The failure to raise a claim at trial and direct appeal generally results in a procedural default barring collateral review, absent a demonstration of cause and prejudice or actual innocence. *See Bousley v. United States*, 523 U.S. 614, 621, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). The United States correctly notes that Claims 2 through 6 are defaulted because El–Amin could have, but failed to raise these claims at trial and on direct appeal. El–Amin responds that the ineffective assistance of counsel and the misconduct of the prosecutor constitute cause excusing his default and it is to those issues that the Court now turns.

El–Amin notes that the Plea Agreement did not require that he waive his right to object to the Presentence Report ("PSR"). El–Amin concludes that, "[s]ince the government did not have a legitimate or good faith basis to move to declare the plea agreement null and void because El–Amin objected to the PSR, its threat to move to

withdraw the concessions given to El–Amin in the agreement was unwarranted and constituted misconduct." El–Amin's Reply at 6. El–Amin's charge that the government engaged in misconduct is not supported by the relevant law and facts.

The law governing the interpretation of plea agreements is an "amalgam of constitutional, supervisory, and private [contract] law concerns." *United States v. Harvey*, 791 F.2d 294, 300 (4th Cir.1986). Generally, contract principles are wholly dispositive in assessing whether a plea agreement was breached with the focus on whether the aggrieved party was denied the benefit of his bargain. *United States v. Ringling*, 988 F.2d 504, 506 (4th Cir. 1993). When the United States and a defendant stipulate in a plea agreement that a particular sentence or sentencing factor is appropriate, the parties may breach the agreement when they subsequently attempt to subvert that stipulation through their actions or advocacy. *See United States v. Boatner*, 966 F.2d 1575, 1578–79 (11th Cir.1992); *United States v. Nolan–Cooper*, 155 F.3d 221, 239 (3d Cir.1998)(noting that advocacy of a position requiring a greater sentence is flatly inconsistent with an agreement to recommend a lesser sentence); *United States v. Canada*, 960 F.2d 263, 268 (1st Cir.1992) (holding that government breached the plea agreement when, at the sentencing hearing, it "affirmatively supported a higher sentence than that upon which the parties had agreed" and "failed to apprise the court of [the defendant's] cooperation"); *United States v. Brown*, 500 F.2d 375, 377 (4th Cir.1974) (concluding government breached obligation to make a specific sentence recommendation when prosecutor followed recommendation by remarking that he had "some problems" with the agreement).

For example, in *Boatner*, the prosecutor agreed to stipulate that two ounces of co-caine would be the only quantity considered for sentencing purposes. *Boatner*, 966 F.2d at 1577. The Court concluded that the government breached the agreement when the government introduced evidence through the presentence investigation report showing that Boatner's drug dealing had involved over three kilograms of cocaine. *Id.* at 1578.

El–Amin contends that because the Plea Agreement did not preclude him from filing objections, he was free to file objections. El–Amin is partially correct: he was free to file objections so long as the objections did not undercut the factual and legal concessions set forth in the Plea Agreement and the Statement of Facts. Paragraphs Seventeen and Eighteen of the Plea Agreement clearly bound both the United States and Defendant to agree that particular sentencing factors and a thirty-seven month sentence were appropriate. El–Amin's tendered objections directly challenged the propriety of the stipulated sentencing factors and the agreed upon sentence and constituted a substantial breach of the Plea Agreement. Thus, the United States was within its rights to threaten to move the Court to find a breach of the Plea Agreement and deny El–Amin the benefits of the agreement if he pursued his objections. *See United States v. Bowe*, 257 F.3d 336, 345–46 (4th Cir.2001) (concluding where plea agreement provided that the adjusted offense level was fifteen and neither party would seek a departure, defendant breached plea agreement by submitting evidence whose only purpose was to support a downward departure); *United States v. Wells*, 262 F.3d 455, 467 (5th Cir.2001) ("[A] defendant should realize breaching a plea agreement is an event that could cause the prosecutor to withdraw leniency with respect to the sentencing recommendation previously given."). Thus, El–Amin's charge of prosecutorial misconduct set

forth in Claim 1 lacks merit and will be dismissed.

Furthermore, Claim 7, raised in his Motion to amend the Complaint, is also without merit. Counsel had correctly advised El–Amin of the hazards of pursuing objections or an appeal. Thus, El–Amin's Motion to Amend the Complaint to add the claim of ineffective assistance of counsel set forth in proposed Claim 7 will be denied because such an amendment is futile. *See United States v. Pittman,* 209 F.3d 314, 317 (4th Cir.2000).

Accordingly, El–Amin's Petition 28 U.S.C. § 2255 will be denied. In light of the lack of merit of the § 2255 motion and El–Amin's legal experience, El–Amin's motion to appoint counsel to assist him in his 28 U.S.C. § 2255 motion will be denied.

### III. The Government's Motion To Withdraw Its Rule 35(b) Motion

El–Amin, by counsel, contends that the Court should preclude the United States from withdrawing the Rule 35(b) because such withdrawal: (1) violates the Plea Agreement; (2) is not rationally related to a legitimate governmental purpose; (3) is in bad faith because it is in retaliation for defendant's 28 U.S.C. § 2255 motion; and (4) is in response to the exercise of a constitutionally protected right.

### A. The withdrawal of the Motion does not violate the plea agreement

 As previously stated, contract principles generally apply to the interpretation of plea agreements. *See United States v. Ringling,* 988 F.2d 504, 506 (4th Cir.1993). Therefore, the first step is to identify the parties' rights and obligations as set forth in the Plea Agreement and to determine whether those rights were modified by the United States filing of a Rule 35(b) motion. The pertinent provisions of the Plea Agreement provided that:

The parties agree that the United States reserves its option to seek any departure under the applicable sentencing guidelines, pursuant to Section 5K *Sentencing Guidelines and Policy Statements* or Rule 35(b) of the Federal Rules of Criminal Procedure, *if in its sole discretion,* the United States determines that such a departure is appropriate.

Plea Agreement ¶ 9 (emphasis added). The plea agreement further provided that:

Any alleged breach of this agreement by either party shall be determined by the Court in an appropriate proceeding at which the defendants' disclosures and documentary evidence shall be admissible and at which the moving party shall be required to establish a breach of the plea agreement by a preponderance of the evidence. The proceeding under this paragraph does not apply, however, to the United States' decision whether to file a a motion based on "substantial assistance" as that phrase is used in Rule 35(b) of the Federal Rules of Criminal Procedure and Section 5k1.1. of the Sentencing Guidelines and Policy Statements. The defendant agrees that the decision whether to file such a motion rests in the United States's sole discretion.

*Id.* at ¶ 15 (emphasis added). The Plea Agreement clearly reserved to the prosecution the sole discretion to pursue a Rule 35(b) motion. Thus, it is clear that nothing within the Plea Agreement limited the government's expansive discretion in determining whether to recommend a sentence reduction. *See United States v. Hartwell,* 302 F.Supp.2d 609, 613 (E.D.Va.2004)(citing *United States v. Snow,* 234 F.3d 187, 190 (4th Cir.2000)).

Even if the original Plea Agreement did not limit the United States's discretion with regard to recommending a sentence

reduction, under certain circumstances the post-plea statements and submissions of the United States may fetter that discretion and alter the terms of the Plea Agreement. *Id.* Here, the only pertinent submission is the Rule 35(b) motion filed by the United States. The timing of the motion was driven by the time limitation of Rule 35, rather than a conclusion that El–Amin had provided substantial assistance that warranted a sentence reduction.[2] No language in the Motion alters the United States's discretion with regard to whether to recommend a sentence reduction. To the contrary, the Motion states,

> The United States respectfully requests that the Court hold the motion under advisement for a period of thirty (30) days to permit the United States to report to the Court the final result of and value of the defendants' cooperation and **whether such efforts merit a reduction of sentence.**

Gov't Motion for Reduction of Sentence (emphasis added). The highlighted language clearly continued to reserve the right to the United States to not recommend any sentence reduction despite the filing of its placeholder Rule 35 Motion. Under such circumstances, the Rule 35(b) Motion modified the Plea Agreement to grant the United States virtually unreviewable authority to withdraw the Rule 35(b) motion. *Id.* at 614.

El–Amin persists in arguing that because the United States authored the Plea Agreement and the subsequent Rule 35(b) motion and neither document explicitly reserved to the United States the right to withdraw the motion, the contract should be construed against the United States and it should be required to fulfill its commitment to move for a sentence reduction. El–Amin's contends that his position is similar to that of the defendants in *United States v. Dixon,* 998 F.2d 228 (4th Cir. 1993) and *United States v. Padilla,* 186 F.3d 136 (2d Cir.1999) where the United States was not permitted to withdraw its motion for a reduction in sentence.

In *Dixon,* the plea agreement provided that:

> Should the defendant, WILLIE JAMES DIXON, cooperate with the government ... with regard to pending investigations and that cooperation is *deemed* by the Government as providing substantial assistance in the investigation *or* prosecution of another person who has committed an offense, the Attorneys for the Government agree to move the Court to depart from the ... Guidelines, pursuant to 5K1.1.

*Id.* at 229 (emphasis added). Dixon cooperated with the United States and provided substantial assistance in the investigation of two large drug trafficking organizations. *Id.* Accordingly, the United States filed a motion for a downward departure and explained the details of Dixon's assistance. *Id.* Shortly thereafter, the United States moved to withdraw the Motion, because contrary to an internal office policy, the prosecutor had failed to receive the prior approval of the United States Attorney before filing the motion for a downward departure. *Id.* Additionally, the United States acknowledged that despite Dixon's substantial assistance in the investigation of crimes, it wished to withhold the Motion until it received substantial assistance in the prosecution as well. *Id.* at 231. The district court permitted the United States to withdraw the Motion and the Fourth Circuit reversed that decision on appeal. The Fourth Circuit explained

---

**2.** The United States explained that the two Assistant United States Attorneys who had handled the prosecution had been detailed out of state and the United States was in the process of assessing the value of El–Amin's assistance.

that, "[t]he government undertook to 'deem' whether Dixon's assistance had been substantial, and not whether it would withhold the § 5k1.1 motion for some unrelated tactical reason." *Id.* The government had conceded that Dixon had provided substantial. assistance in the investigation of other crimes. *Id.* Therefore, "the government ha[d] no right to insist on assistance in both investigation and prosecution under the plea agreement" because the plea agreement set forth those obligations in the disjunctive. *Id.*

In *Padilla,* the Second Circuit addressed a plea agreement that was silent as to whether the United States could withdraw a Motion for substantial assistance. *Padilla,* 186 F.3d at 138. The agreement simply provided that the United States would file a request pursuant to § 5K1.1 of the Guidelines if it determined that Padilla had provided substantial assistance in the investigation or prosecution of other crimes. *Id.* The United States determined that Padilla had provided such assistance and submitted an unconditional § 5K1.1 letter on Padilla's behalf. *Id.* at 139. Thereafter, Padilla failed to appear for sentencing and was convicted for new criminal activity in state court. *Id.* The district court granted the prosecutor's request to withdraw its § 5K1.1 letter. *Id.* The Second Circuit reversed, "[r]eading the agreement strictly against the Government, as our precedent requires, we conclude that it prohibits the Government from withdrawing the Section 5K1.1 ... motion because it failed to enumerate specifically the right to withdraw the motion in the several specific and serious consequences that would follow if Padilla committed further crimes or otherwise violated the agreement." *Id.* at 141.

El–Amin's circumstances are readily distinguishable from *Dixon* and *Padilla* where the United States had by its submissions unconditionally committed itself to recommend a sentence reduction. *See Hartwell,* 302 F.Supp.2d at 616 (concluding that *Padilla* is not persuasive authority where the placeholder Rule 35(b) reserves the right not to recommend a sentence reduction). El–Amin fails to direct the Court to language in the Plea Agreement or the Rule 35(b) motion that fettered the United States's discretion with regard to recommending a sentence reduction. Indeed, as previously observed, in filing the placeholder Rule 35(b) Motion, the United States reserved the right not to recommend any sentence reduction. *Id.* Thus, "the plenary power of the United States to file a Rule 35(b) motion in the first instance ... was replaced with the plenary power to withdraw such a motion once filed." *Id.* at 619. Accordingly, El–Amin's assertion that the United States violated the Plea Agreement by withdrawing the Rule 35(b) motion is rejected.

### 2. The Withdrawal of the Rule 35(b) Motion was Rationally Related to a Legitimate Government Purpose

Because neither the Plea Agreement nor the Rule 35(b) motion encumbered the United States's expansive discretion with regard to sentence recommendations, the jurisprudence governing the United States's refusal to make a Rule 35(b) governs the United States's withdrawal of such a Motion. *Hartwell,* 302 F.Supp.2d at 619. That jurisprudence provides that, "absent a substantial threshold showing that the refusal to move for a sentence reduction is based on bad faith or unconstitutional motives, *e.g.,*—race, religion, or gender—, or is not rationally related to a legitimate government end, this Court cannot review it." *Id.* (summarizing *Wade v. United States,* 504 U.S. 181, 186, 112 S.Ct. 1840, 118 L.Ed.2d 524 (1992); *United States v. LeRose,* 219 F.3d 335, 342 (4th Cir.2000)). El–Amin contends that the decision to withdraw his Rule 35(b) motion

was driven by all three of these prohibited factors because it was motivated by his filing of a 28 U.S.C. § 2255 motion.

**(a) Legitimate Government Purpose**

In its Motion to Withdraw the Rule 35(b) Motion, the United States represented that it was withdrawing the Motion because it had determined that El–Amin's assistance did not rise to the level of substantial assistance and:

> On October 21, 2004, the defendant filed a motion under 28 U.S.C. § 2255, in which he alleges, among other things, claims of prosecutorial misconduct, ineffective assistance of counsel, and the insufficiency of the factual bases underlying the four sentencing enhancements to which the defendant stipulated in his plea agreement and Rule 11 hearing.

Withdrawal of Motion For Reduction of Sentence. Thus, the Court will assume for purposes of this opinion, that the withdrawal of the Rule 35(b) was motivated in part by El–Amin's conduct in conjunction with his § 2255 Petition. Nevertheless, contrary to El–Amin's assertion, the evidence does not suggest that the United States withdrew the Rule 35(b) Motion merely because El–Amin submitted a 28 U.S.C. § 2255 Petition. Rather, as explained below, the withdrawal was directly linked to El–Amin's prevarication with regard to previously stipulated facts and his failure to provide truthful cooperation.

During the plea proceedings, El–Amin agreed to cooperate fully and truthfully with the United States. Plea Agreement at ¶¶ 6(d), 8. El–Amin acknowledged that the loss amount attributable to his conduct ranged between $400,000 and $1,000,000 and sentencing enhancements for use of a special skill and obstruction of justice were appropriate. *Id.* at ¶ 17. During his Rule 11 proceedings, El–Amin averred, *inter alia,* that the factual allegations in Count One of the Superseding Indictment were true and accurate in all material aspects. *Id.* at ¶ 10. Thus, El–Amin acknowledged that as part of the conspiracy, "in or about February 2002, and again on or about February 22, 2003, [he] attempted to persuade Crawford to file tax returns with the IRS falsely declaring as her own all gross receipts other than those which he claimed." Superseding Indictment ¶ 12(*o*).

██ Notwithstanding these factual representations, El–Amin submitted a § 2255 Petition wherein he disputes the accuracy of his prior factual representations to the Court. Specifically, El–Amin swears under oath that he did not attempt to persuade Crawford to file tax returns with false information and that there was no corrupt intent associated with the February 2002 and February 2003 discussions with Crawford. While El–Amin now insists that there was nothing illicit about his February conversations with Crawford, he fails to explain why he should be able to discard his prior contrary representations during his plea proceedings. *See Crawford v. United States,* 519 F.2d 347, 349 (4th Cir.1975), *overruled on other grds., United States v. Whitley,* 759 F.2d 327 (4th Cir.1985)(en banc). In this circuit, "the accuracy and truth of an accused's statements at a Rule 11 proceeding ... are conclusively established by that proceeding unless and until he makes some reasonable allegation as to why this should not be so." *Id.* In light of this record, it appears that El–Amin's recent submissions, regarding his February conversations with Crawford are false. Even the most generous reading of the El–Amin's conduct, which credits the veracity of his recent submissions, demonstrates that his prior contrary representations were a breach of his obligation to cooperate fully and truthfully with the government. Thus, the decision to withdraw the Rule 35(b) Motion is rationally related to the legitimate govern-

ment interest of promoting truth from those who seek to cooperate with the government. By requiring truthful statements whether in the plea agreement, the post-plea debriefing, or a post-conviction motion, the government unquestionably furthers the legitimate government end of truth telling in the criminal justice system. *See Hartwell*, 302 F.Supp.2d at 620; *see also United States v. Wolf*, 270 F.3d 1188, 1191 (8th Cir.2001)(refusing to file a substantial assistance motion of behalf of defendant who lied is fully consistent with the legitimate governmental purpose of encouraging criminal defendants to be cooperative and forthright with the government); *United States v. Dixon*, 998 F.2d 228, 229 (4th Cir.1993)(suggesting defendant's recantation would provide viable grounds for withdrawing a motion for reduction of sentence). *Cf. United States v. Johnson*, 325 F.3d 205 (4th Cir.2003)(affirming defendant's conviction under 18 U.S.C. § 1623 for filing false statements in conjunction with his habeas petition); *United States v. Butler*, 272 F.3d 683, 687 (4th Cir.2001)("[B]y obstructing the orderly administration of the criminal justice system, he is engaging in the very antithesis of substantial assistance.").

**(b) Bad Faith**

■ El–Amin suggests that the government's withdrawal of its Rule 35(b) motion in the wake of his § 2255 Petition demonstrates bad faith. To support this charge, El–Amin alleges that, "there was some

discussion between counsel regarding Mr. El–Amin's § 2255 filing, and some suggestions were made that, if he agreed to withdraw the § 2255 Petition, the government would go forward with its Rule 35(b) Motion. An offer was made by the defendant to that effect, but was ultimately rejected by the government." Def.'s Resp. Withdrawal of Mot. for Reduction of Sentence at 3.[3] The foregoing vague allegations do not provide a substantial basis for concluding the United States improperly introduced a new requirement that El–Amin forego any § 2255 Petition in order to obtain a recommendation for a sentence reduction. Indeed, it appears from the chronology of events and the tenor of El–Amin's submissions that El–Amin was attempting to use the § 2255 Petition to gain leverage to ensure that the Rule 35(b) Motion was filed rather than the other way around. More to the point, the government's refusal to pursue the Rule 35(b) was not linked to an improper attempt to wring additional concessions from El–Amin after he had fully completed his obligations. Rather, the government properly was withholding any benefit to El–Amin because El–Amin had failed to fulfill the condition precedent of the Agreement that he provide complete and truthful cooperation. *See United States v. Saunders*, 226 F.Supp.2d 796, 803 (E.D.Va.2002)(Ellis, J.). Under such circumstances, the United States is merely demanding the benefit of its initial bargain.

---

**3.** El–Amin did not tender any useful analysis as to why, under the relevant precedent, the United States's conduct constituted bad faith. The Seventh Circuit recently addressed the issue in *United States v. Wilson*, 390 F.3d 1003, 1012 (7th Cir.2004). In *Wilson*, the Seventh Circuit concluded that prosecutor acted in bad faith when, after the defendant provided substantial assistance, the prosecutor refused to move for a sentence reduction unless the defendant agreed to forego a viable

civil suit related to prior incarceration against the United States. *Id.* The court concluded that after the defendant fulfilled his part of the bargain and provided substantial assistance, it was "unfair for [the] Assistant United States Attorney to then announce that the government would ignore its reciprocal promise to perform unless Wilson jumped over new hurdles that were not part of the bargain." *Id.* at 1011–12 (citing *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 433 (7th Cir.1993)).

[T]o hold otherwise ... would provide cooperating defendants with a license to lie about some matters and be truthful about others, yet still argue that matters about which they were truthful constituted substantial assistance. This would be a nonsensical result, when the agreement is clearly contingent upon 'complete and truthful cooperation.'

*Id.* El–Amin has failed to make substantial threshold showing that the United States acted in bad faith.

### (c) Unconstitutional Motive

■ Lastly, El–Amin contends that the United States acted with an unconstitutional motive because its withdrawal of the Rule 35(b) was in retaliation for the exercise of his constitutionally protected right to challenge the lawfulness of his detention. There is support for the proposition that a prosecutor acts with an unconstitutional motive when he refuses to move for a downward departure in order to punish a defendant for exercising his constitutionally protected rights, such as the right to a jury trial. *See United States v. Paramo,* 998 F.2d 1212, 1219 (3d Cir.1993). El–Amin has not made a substantial showing that the United States withdrew the Rule 35(b) Motion simply because he chose to exercise his retained right to pursue a legal challenge to his conviction. Rather, as explained above, the record demonstrates that the withdrawal was prompted by El–Amin's breach of his prior promise to cooperate fully and truthfully. *See Saunders,* 226 F.Supp.2d at 800.[4] Accordingly, El–Amin has failed to make a substantial threshold showing that the withdrawal of the Rule 35(b) was the product of an unconstitutional motive. Accordingly, the Rule 35(b) Motion is withdrawn and

will receive no further consideration by the Court.

An appropriate Order shall issue.

---

4. It is extremely doubtful that the right of reasonable access to the court and to pursue post-conviction motions, encompasses a right to advance false statements or pursue frivolous claims of the ilk contained in El–Amin's § 2255 motion. *See Lewis v. Casey,* 518 U.S. 343, 353, 116 S.Ct. 2174, 135 L.Ed.2d 606 (2002); *Nix v. Whiteside,* 475 U.S. 157, 174, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986).